**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**RAY RUFFIN,
ADC #89703**                                                                                 **PLAINTIFF**

**V.**                    **Case No. 5:15CV00011 JM/BD**

**DEBRA YORK, et al.**                                               **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**     **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge James M. Moody Jr. A party to this suit may file written objections with the Clerk of Court within fourteen (14) days of filing of the Recommendation. Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

By not objecting, any right to appeal questions of fact may be jeopardized. And, if no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record.

**II.**     **Background:**

Plaintiff Ray Ruffin, formerly an inmate at the Varner Supermax Unit of the Arkansas Department of Corrections ("ADC"), filed this 42 U.S.C. § 1983 lawsuit claiming that the Defendants York, Norris, Griffin, and Felix were deliberately indifferent

to his serious medical needs. He also included pendent state claims for medical malpractice and negligence against Defendants Felix and Felix Limb and Brace Company. (Docket entry #2)

The Court has already dismissed Mr. Ruffin's claims against Defendants Griffin, Norris, and York based on his failure to exhaust his administrative remedies. (#62) The remaining Defendants, Leland Felix and Felix Limb and Brace Company ("Felix Defendants"), have now moved for summary judgment. They argue they are not liable under either 42 U.S.C. § 1983 or the Arkansas Medical Malpractice Act. They further contend that they were not negligent. (#80) Mr. Ruffin contends that there are material facts in dispute and that he should be allowed to proceed on his remaining claims. (#90)

## III. Discussion:

### A. Standard

Summary judgment means that the court rules in favor of a party without the need for a trial. A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

### B. Facts Viewed in Light Most Favorable to Mr. Ruffin

In the fall of 2011, Mr. Ruffin complained to the medical department at the Varner Unit that his prosthetic leg no longer fit and needed to be replaced. (#82, #92) The ADC

made arrangements for Mr. Ruffin to see Defendant Felix, a prosthetist, who, under a contractual arrangement with Correct Care Solutions, regularly provided prosthetic services to inmates. (#82) On November 1, 2011, Defendant Felix examined Mr. Ruffin's prosthetic and noticed that it was causing a weeping ulcer on Mr. Ruffin's femur. He scheduled an appointment for Mr. Ruffin to be seen at his clinic. (#82, #92)

On November 17, 2011, Defendant Felix altered the fit of the prosthetic to accommodate the fact that Mr. Ruffin had gained 35 pounds. (#82, p.2, #92, p.2) According to Mr. Ruffin, the prosthetic became unwearable because wearing it caused extreme pain. (#92, p.2) Defendant Felix recommended that Mr. Ruffin use lubricant. (#82, p.2)

On February 14, 2012, Mr. Ruffin again saw Defendant Felix and requested that the entire prosthetic be replaced. (#92, p.3) According to Mr. Ruffin, at that time, Defendant Felix was well aware that Mr. Ruffin could not use his prosthetic without extreme pain. (#92, pp.3-4) Defendant Felix provided two nylon sheaths to aid in the donning and doffing of the limb. (#82, p.2)

On June 4, 2012, Mr. Ruffin requested a protectant to reduce abrasions and assist in healing the sores caused by the prosthetic. (#92, p. 4) Mr. Ruffin had another appointment with Defendant Felix on June 6, 2012. According to Mr. Ruffin, he was not able to make it to that appointment because it was too painful for him to wear the prosthetic, and the ADC did not have a wheelchair-accessible van to transport him to the appointment. (#92, pp. 3-4) Defendant Felix, however, sent Mr. Ruffin lubricant, which

Defendant Felix later learned that Mr. Ruffin could not use because of its high alcohol content. (#82, p.3)

On June 19, 2012, Defendant Felix suggested to Mr. Ruffin that he use crutches or a wheelchair for the duration of his incarceration, knowing Mr. Ruffin's earliest possible release date was in 2017. (#92, p.6) On November 6, 2012, after Mr. Ruffin had fallen and ruptured the seal in his prosthetic, Defendant Felix saw Mr. Ruffin at the prison clinic and recommended a replacement prosthetic. (#82, p.3, #92, p.6)

On December 10, 2012, Mr. Ruffin was measured for a new prosthetic at Defendant Felix's clinic. (#92, p.7) According to Mr. Ruffin, he explained to Defendant Felix that he could not use the type of leg socket that he was fitted for and that only a mechanical, locking-type sock would be usable because of the shape of his knee and knee cap. (#92, p.7)

On January 31, 2013, Mr. Ruffin again saw Defendant Felix at his clinic for a pre-fit of the liner. (#92, p.8) On March 7, 2013, Mr. Ruffin saw Defendant Felix for the final fit, but the prosthetic did not fit. (#92, p.8)

On April 22, 2013, Mr. Ruffin received the new prosthetic; however, within two hours Mr. Ruffin claims he was experiencing extreme pain and discomfort because the socket was too tight. (#92, p.9)

In October of 2013, Mr. Ruffin saw Defendant Felix at the Varner Unit. (#92, p.10) At that time, Mr. Ruffin had lost 20 pounds and informed Defendant Felix that the

socket was now too large and needed to be replaced. (#92, p.10) Defendant Felix offered stump socks. (#82, p.3-4, #92, p.11)

On April 9, 2014, Mr. Ruffin saw Defendant Felix and complained that he could not use his prosthetic and requested a different type of prosthetic. Defendant Felix suggested that Mr. Ruffin be issued crutches. (#82, p.4, #92, p.11)

On September 24, 2014, Defendant Felix took the prosthetic leg and said he would see what could be done to make it wearable. (#92, p.12) On October 22, 2014, Defendant Felix shipped the prosthetic leg back to Mr. Ruffin, but without changes. (#92, p.12)

Mr. Ruffin was eventually seen by Snell Prosthetic, which recast the leg and reworked the socket. (#82, p.6) Mr. Ruffin received the new leg in July 2015 and has not had any problems with this prosthetic. (#82, p.6, #80-2, p. 17)

C. Deliberate-Indifference

Determining whether an official was deliberately indifferent to an inmate's medical needs involves both an objective and a subjective test. *Scott v. Benson*, 742 F.3d 335, 339–40 (8th Cir. 2014). To prevail, Mr. Ruffin must show that he suffered from an objectively serious medical need and that the Defendants "actually knew of but deliberately disregarded [his] serious medical need." *Id.* A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Scott,* 742 F.3d at 339 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

The subjective prong of the test requires a showing that a defendant had a mental state "akin to criminal recklessness." *Id*. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).  Mr. Ruffin must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

Furthermore, a prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials "ignored an acute or escalating situation or that [these] delays adversely affected his prognosis."  See *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir.1995) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995), abrogated on other grounds by *Johnson v. Jones*, 515 U.S. 304 (1995), as recognized in *Reece*, 60 F.3d at 492 (internal quotation marks omitted)).

Defendant Felix first saw Mr. Ruffin in November 2011.  Initially, Defendant Felix attempted to alter the fit of the prosthetic, provided nylon sheaths and lubricants, and suggested crutches or the use of wheelchair.  In April of 2013, almost a year-and-a-half after he initially examined Mr. Ruffin, Defendant Felix provided Mr. Ruffin a new prosthetic.  Mr. Ruffin did not agree with the type of replacement prosthetic Defendant Felix chose.  For almost two years, from April of 2013 until Snell Prosthetic altered the prosthetic in July of 2015, Mr. Ruffin was unable to wear the prosthetic.  During that time, Defendant Felix offered stump socks, suggested Mr. Ruffin use crutches, and took the prosthetic, but returned it with no changes.

Based on this evidence, Mr. Ruffin has failed to prove that Defendant Felix completely ignored the situation or that the delay he experienced in receiving a properly fitting prosthetic affected his prognosis. Although Mr. Ruffin was unable to use a prosthetic while Defendant Felix was treating him, Defendant Felix offered alternative solutions and provided Mr. Ruffin a new prosthetic. Unquestionably, Mr. Ruffin did not agree with the treatment provided by Defendant Felix, but a prisoner's disagreement with a medical provider's treatment decisions does not rise to the level of a constitutional violation. *Langford v. Norris*; 614 F.3d 445, 460 (8th Cir. 2010).

Unfortunately for Mr. Ruffin, based on the facts alleged and the evidence presented, he cannot show that Defendant Felix was deliberately indifferent to his medical needs. Because Defendant Felix was not deliberately indifferent, there can be no vicarious liability for Defendant Felix Limb and Brace Company.

In any event, corporations cannot be held vicariously liable, in a § 1983 action, for the wrongful actions of their employees. *Burke v. North Dakota Dept. of Corrs. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002). Thus, Defendant Felix Limb and Brace Company cannot be held liable under § 1983 for inadequate medical care provided by the Defendant Felix. Instead, Defendant Felix Limb and Brace Company could be held liable only if it had unconstitutional policies or practices that caused Mr. Ruffin's injuries. *Id.*; *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders v. Sears Roebuck & Co.,* 984 F.2d 972, 975-976 (8th Cir. 1993). Mr. Ruffin has not alleged, and there is no

evidence, that any injuries were caused by unconstitutional policies or practices of Felix Limb and Brace Company.

    D.    Medical Malpractice and Negligence Claims

A district court may decline to exercise supplemental jurisdiction over state claims against a defendant if it has dismissed all federal claims against that defendant. 28 U.S.C. § 1367(c)(3). Because Mr. Ruffin cannot prevail on his deliberate-indifference claims against Defendants Felix and Felix Limb and Brace, Judge Moody should decline to exercise jurisdiction over Mr. Ruffin's state claims against these Defendants.

**IV.**    **Conclusion:**

The Court recommends that Mr. Ruffin's § 1983 claims against Defendants Felix and Felix Limb and Brace Company be DISMISSED, with prejudice. The Court further recommends that Mr. Ruffin's state malpractice and negligence claims against these Defendants be DISMISSED, without prejudice.

Dated this 23rd day of June, 2016.

                                                   UNITED STATES MAGISTRATE JUDGE